| UNITED STATES DISTRICT COURT | FOR PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | |

---

NESTOR NICOLAIDES,

                Plaintiff,        **MEMORANDUM & ORDER**

    – against –                18-CV-4945-ERK-JO

DIVINE AND SERVICE, LTD.,

                Defendant.

---

Korman, *J.*:

      Plaintiff Nestor Nicolaides opened a Lowe's corporate credit card in the name of his business, Gold Coast Insurance Agency, Inc. He now sues defendant debt collector Divine and Service, Ltd. for sending him a dunning letter that fails to comply with the Fair Debt Collection Practices Act (FDCPA). Divine contends that the FDCPA does not apply because (1) Gold Coast is the debtor, not plaintiff, and (2) the underlying transaction is business, not consumer, related. The parties cross-move for summary judgment.

## BACKGROUND

      On August 11, 2011, Nestor Nicolaides opened a credit card account with Lowe's in the name of Gold Coast Insurance Agency, Inc. Pl.'s 56.1 Stmt. ¶ 26, ECF No. 18-1; Koehler Decl. ¶ 6, ECF No. 20. That same day, Nicolaides purchased approximately $2,400 worth of patio furniture, which he claims was for his residence. Pl.'s 56.1 Stmt. ¶ 27; Ward Decl. Ex. 3, at 4, ECF No. 15-8. On the credit card application, Nicolaides was listed as the "contact person and personal guarantor." Koehler Decl. ¶ 6. The cardholder agreement, subsequently mailed to Nicolaides, provided as follows:

> You understand that we will be unable to determine whether any
> given purchase charged on your Account was in fact authorized by

1

and for the benefit of the business in whose name the Account is established. You agree that your promise to pay, as contained in this section of this Agreement, will apply to all purchases made by any of you whether or not the purchase was in fact authorized by and for the benefit of that business. **You agree that this Account shall be used only for the purchase of merchandise for commercial or business purposes, and not for personal, family, or household purchases.**

Koehler Decl. Ex. B, ECF No. 20-2 (emphasis in original).

Neither Gold Coast nor Nicolaides fully paid off the debt in a timely manner. Def.'s Resp. Pl.'s 56.1 Stmt. ¶ 29, ECF No. 21. Synchrony Bank—the creditor—retained Divine and Service, Ltd. in July 2018 to collect the remaining balance. Ward Decl. ¶¶ 4, 11, ECF No. 15-5. However, Gold Coast was dissolved by proclamation of the State of New York on June 29, 2016. Def.'s 56.1 Stmt. Ex. 1, ECF No. 15-2. An alternate business address is listed for Nicolaides as an "individual" by the Department of Financial Services insurance broker registry. Def's 56.1 Stmt. Ex. 2, ECF No. 15-3. Although Divine alleges "it was Gold Coast—not [Nicolaides]—who fell behind on payments owed," it admits that Nicolaides would be "obligated to make . . . payments . . . in his capacity as personal guarantor of the debt owed by Gold Coast." Def.'s Resp. Pl.'s 56.1 Stmt. ¶ 29.

On July 26, 2018, Gold Coast sent a dunning letter with "Insurance" on the first address line and "Nestor Nicolaides" on the line below to the address listed for Nicolaides, the individual, on the Department of Financial Services website. Compl. Ex. 1, ECF No. 1-1 ("Dunning Ltr."). The letter read as follows:

> RE: Synchrony Bank
> Lowe's Business Revolving
> [Redacted Account Number]
> XXXXXXXXXXXX1241
>
> Total: $1,116.33

> The above referenced claim has been assigned to this office for collection.
>
> Unless you notify this office within thirty days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor. [. . .] This is an attempt to collect a debt. Any information obtained will be used for that purpose. This is a communication from a debt collector.

*Id.*

Nicolaides alleges that this letter violates the FDCPA for, *inter alia*, failing to properly specify "the name of the creditor to whom the debt is owed." Compl. ¶¶ 39-41, 50; *see* 15 U.S.C. §§ 1691g(a)(2), 1692e(10). Divine does not meaningfully dispute that the dunning letter is deficient if the FDCPA applies. *See* Reply Br. 6-7, ECF No. 19 (providing only the conclusory assertion that "whether the dunning letter properly identifies the creditor to whom the debt is owed" is "in dispute"). Nor could it under this district's prevailing caselaw. *See, e.g.*, *White v. Prof'l Claims Bureau, Inc.*, 284 F. Supp. 3d 351, 362-63 (E.D.N.Y. 2018) (violation established where "defendant's letters to plaintiffs each contain only 'one, ambiguous reference to the creditor'"); *Talyor v. MRS BPO, LLC*, 2017 WL 2861785, at *3 (E.D.N.Y. July 5, 2017) ("[M]erely stating 'RE' and the name of an entity in a collection letter does not satisfy the requirements of the FDCPA." (alterations omitted)); *Datiz v. Int'l Recovery Assoc., Inc.*, 2016 WL 4148330, at *1, 11 (E.D.N.Y. Aug. 4, 2016) (plaintiff stated claim where letter caption listed hospital name "without more explanation"). From the letter, neither the identity of the creditor nor the relationship between Divine, Synchrony, and Lowe's would be apparent to the least

sophisticated consumer, especially considering that the account was presumably opened at a Lowe's retail location, not directly through Synchrony. *See White*, 284 F. Supp. at 362-63.

Nevertheless, the failure to adequately identify the creditor results in a violation of the FDCPA only if the FDCPA applies in the first place. Thus, this case turns on the validity of defendant's argument that an FDCPA violation cannot lie where a "consumer" violates a contractual promise to use a corporate credit card "only for the purchase of merchandise for commercial or business purposes, and not for personal, family, or household purchases," with the understanding that the creditor cannot "determine whether any given purchase . . . was in fact authorized by and for the benefit of the business." Koehler Decl. Ex. B (emphasis omitted).

**STANDARD OF REVIEW**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Viewing the facts in the light most favorable to the party opposing the motion, *Matsushitsa Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), a genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering dueling motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

**ANALYSIS**

"[T]he FDCPA generally forbids collectors from engaging in unfair, deceptive, or harassing behavior" and "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection." *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (quoting *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001)). A

"debt," subject to FDCPA protection, is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

I.  **Is Plaintiff a "Consumer" Under the Statute?**

Divine first argues that Nicolaides lacks standing to sue because the credit card holder is a corporation, not a "consumer," defined as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3); *see Cohen v. Potenza*, 2016 WL 6581233, at *7 (E.D.N.Y. Nov. 3, 2016) (explaining that a corporation is not a "natural person"). According to Divine, "the only evidence before this Court indicates that the alleged debt is owed by Gold Coast," not Nicolaides. Def.'s Resp. Pl.'s 56.1 Stmt. ¶ 25. And Divine addressed the dunning letter to "Insurance," referring to Gold Coast Insurance Agency, Inc., listing Nicolaides only as a billing contact (although the term "billing contact" does not appear in the letter). *See* Dunning Ltr. But Gold Coast, the corporate account holder, has long been dissolved. Def.'s 56.1 Stmt. Ex. 1. While dissolution does not prevent a corporation from discharging its liabilities or defending a legal action, *see* N.Y. Bus. Corp. Law §§ 1005, 1006, the record indicates that Nicolaides personally guaranteed the account, Ward Decl. ¶ 10, ECF No. 15-5; Koehler Decl. ¶ 6, ECF No. 20.

Under the circumstances, it appears most likely that Divine's only route to recovery is through Nicolaides, who concedes that he owes the debt. Nicolaides Decl. ¶¶ 5-8, ECF No. 18-2. Indeed, Divine sent the dunning letter to Nicolaides's personal address. Dunning Ltr. To be sure, a debt collector's attempt to collect from an individual does not convert a commercial debt into a consumer debt for purposes of determining the nature of the debt itself. *See Util. Metal Research, Inc. v. Coleman*, 2008 WL 850456, at *6 (E.D.N.Y. Mar. 28, 2008). But on the threshold question

5

of whether Nicolaides is a "consumer," he need only show that he is a natural person who allegedly owes a debt. *See* 15 U.S.C. § 1692a(3). *See generally Loja v. Main Street Acquisition Corp.*, 906 F.3d 680, 684 (7th Cir. 2018) (explaining scope of term "consumer"). To that end, Divine concedes that Nicolaides would be "obligated to make . . . payments . . . in his capacity as personal guarantor of the debt owed by Gold Coast." Def.'s Resp. Pl.'s 56.1 Stmt. ¶ 29. In the end, Divine offers no evidence to suggest that Gold Coast has any ability to pay the debt or refuting Nicolaides's testimony that he now owes the debt. For these reasons, I conclude that Nicolaides is a "consumer" under the statute.

## II. Does a Consumer Debt Arise Out of Corporate Credit Card Misuse?

"[A]ctions arising out of commercial debts are not covered by the protective provisions of the FDCPA." *Goldman v. Cohen*, 445 F.3d 152, 154 n.1 (2d Cir. 2006), *superseded by statute on other grounds as stated in Carlin v. Davidson Fink LLP*, 852 F.2d 207, 212-13 (2d Cir. 2017). "[T]o determine whether the transaction was primarily consumer or commercial in nature," "courts typically 'examine the transaction as a whole,' paying particular attention to 'the purpose for which the credit was extended.'" *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992) (quoting *Tower v. Moss*, 625 F.2d 1161, 1166 (5th Cir. 1980)). In a credit card transaction, the cardholder's purpose at the time of purchase may conflict with a contrary purpose articulated in the credit agreement. This occurs where, as here, a corporate credit card is used to purchase goods for personal use. Neither the Second Circuit nor any district courts within the circuit have addressed whether a personal debt wrongfully incurred on a credit card issued to a corporation is a "debt" under the FDCPA.[1]

---

[1] While the Second Circuit has previously recognized that "at a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value," it has not held that the purpose of a credit card transaction must be discerned from the cardholder's subjective intent at the time of purchase and not the credit card agreement. *See Beggs v. Rossi*, 145 F.3d 511, 512 (2d Cir. 1998) (per curiam) (quoting *Staub v. Harris*, 626 F.2d 275, 278 (3d Cir. 1980)) (personal property taxes are not an FDCPA "debt").

6

Most district courts "look to the ostensible purpose for which the obligation was entered into, but [consider] the funds' *actual use* . . . paramount." *See, e.g.*, *Davis v. Hollins Law*, 968 F. Supp. 2d 1072, 1077 (E.D. Cal. 2013) (emphasis added). Under this view, if a plaintiff obtains a credit card "for business purposes, it does not follow as a matter of law that collection efforts on that card are exempted from the FDCPA." *Id.* at 1080. Rather, "[a]n inquiry must be made into what he purchased in allegedly incurring an unpaid obligation." *Id. Accord Perk v. Worden*, 475 F. Supp. 2d 565, 569-70 (E.D. Va. 2007) (FDCPA applies to personal use of corporate credit card); *Clark v. Brumbaugh & Quandahl, P.C.*, 731 F. Supp. 2d 915, 922 (D. Neb. Aug. 12, 2010) (same); *Kimmel v. Cavalry Portfolio Servs., LLC*, 2011 WL 2039049, at *4 (E.D. Pa. May 25, 2011) (same). This means sifting through each corporate credit card purchase to divine which really may be for personal, family, or household use. *See, e.g.*, *Hetherington v. Allied Int'l Credit Corp.*, 2008 WL 2838264, at *3-4 (S.D. Tex. Jul. 21, 2008) (absent "further guidance from the Fifth Circuit as to what constitutes a bank account that is primarily consumer in nature, or what factors should be considered," court examined each transaction to determine whether the account was primarily used for personal or commercial purposes). It is hard to imagine that Congress intended creditors and debt collectors to scour commercial accounts for any whiff of misuse. Such an approach would permit cardholders who flaunt their corporate credit card agreements to benefit from their fraud under a consumer-protection statute.

The Seventh Circuit has provided the most salient analysis of "the relevant time for determining the nature of the debt." *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 874-75 (7th Cir. 2000). Its reasoning helps to demonstrate the flaw of many district courts' treatment of corporate credit card transactions. In *Miller*, the plaintiff took out a mortgage to finance his residence but later moved out and rented the house for profit. *Id.* "By

7

this time, renting the property to strangers, the plaintiff was making a business use of the property and so the mortgage loan was financing a business rather than a consumer debt." *Id.* Nevertheless, Judge Posner explained that courts must look to "when the loan is made" to determine the nature of the obligation, "not when collection is attempted." *Id.* That is because the statute makes clear that courts must evaluate the nature of "the transaction out of which the obligation to repay arose, not the obligation itself." *Id.* at 875. And "[t]he original creditor is more likely to know whether the debt was personal or commercial at its incipience than either the creditor or the debt collector is to know what current use the debtor is making of the loan." *Id.*; *see also Cohen*, 2016 WL 6581233, at *9 ("At most, plaintiffs' evidence establishes only that the [loan] proceeds . . . were, at some point, used for non-business purposes[,] not that the loan transactions as a whole were personal in nature." (quotation marks and alterations omitted)).

In the case of a loan, the moment the loan is issued and the moment the debt is incurred are one and the same. In that scenario, the creditor is "likely to know whether the debt was personal or commercial." *Miller*, 214 F.3d at 875. A credit card transaction is slightly different: No money is owed at the moment the account is opened. Yet just as the original creditor of a loan "is more likely to know whether the debt was personal or commercial at its incipience than either the creditor or the debt collector is to know what current use the debtor is making of the loan," *id.*, a credit card issuer cannot foresee a cardholder's future misuse in violation of the terms of the agreement. The district courts that have applied the FDCPA to corporate credit card debts discount this reality by elevating the cardholder's subjective intent at the time of purchase over all other considerations, including, most notably, the terms of the credit agreement.

"What matters in the context of an FDCPA claim is the asserted basis for the obligation to pay." *Beauvoir v. Israel*, 794 F.3d 244, 248 (2d Cir. 2015) (quotation marks omitted). Key to that

8

obligation is the relationship between the creditor and the debtor. Thus, courts regularly examine the terms of the credit agreement to evaluate the nature of a transaction. *See Hepsen v. Resurgent Capital Servs., LP*, 383 F. App'x 877, 884 n.7 (11th Cir. 2010) (affirming district court's ruling that "debt was a 'consumer' debt because it was related to a . . . credit card in [the debtor's] name, connected to his home address, and not used for business"); *Powers v. Kearns, Brinen & Monaghan, Inc.*, 2015 WL 8678378, at *3-4 (W.D.N.Y. Dec. 11, 2015) ("[P]laintiff's undisclosed motivations in securing the cash advance and her later use of the money [for personal expenditures] in breach of the [agreement] are insufficient to transform this transaction from a commercial sale agreement to a personal loan."); *Ross v. Panteris & Panteris, LLP*, 2013 WL 5739145, at *10-11 (D.N.J. Oct. 22, 2013) (relying on business credit card agreement to hold debt was commercial in nature). And at least one district court has declined to extend the FDCPA to corporate credit card debts altogether. *See Vasilaskos v. Blitt & Gaines, P.C.*, 2013 WL 4047634, at *3 (N.D. Ill. Aug. 8, 2013).

This approach makes sense because the promise to use a corporate credit card only for business purposes is an *ex ante* expression of the cardholder's intent. Courts regularly hold parties to the intent manifested in a written agreement to "ensure some measure of stability in commercial relations" and to "avoid the possibility that fraud might be perpetrated if testimony as to subjective intent could be substituted for the plain meaning of a contract." *See Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1988). In evaluating a credit card transaction, the cardholder's intent behind specific purchases must therefore be subordinated to a contrary purpose articulated in the credit agreement. That is, the creditor or debt collector is justified in relying on the debtor's express contractual representation of the account's purpose. This better comports with the purpose of the FDCPA, limits uncertainty, and avoids unfairness.

9

As the Second Circuit has repeatedly emphasized, the primary purpose of the FDCPA is to protect vulnerable consumers from predatory debt collection practices. *See, e.g.*, *Avila v. Riexinger & Assoc., LLC*, 817 F.3d 72, 75 (2d Cir. 2016). Nevertheless, "it also protects the interests of law-abiding debt collectors." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 95 (2d Cir. 2008). Here, the interests of the debt collector clearly outweigh those of the "consumer" who appears to have obtained a corporate credit card by fraud.

Plaintiff's proposed extension of the FDCPA does not protect consumers; it protects savvy and unscrupulous businesspeople. Nicolaides opened a corporate credit card in the name of Gold Coast. It is undisputed that he immediately used the corporate credit card to buy a patio set for his residence, even though the terms of the credit card agreement prohibit using the card "for personal, family, or household purchases." Koehler Decl. Ex. B. Yet sometime between the moment he opened the credit card and swiped it, Nicolaides allegedly gained FDCPA protection. He was no less sophisticated a businessman. *See Miller*, 214 F.3d at 875 ("A businessman who converts a business purchase to personal use does not by virtue of that conversion lose his commercial sophistication and so acquire a need for statutory protection."). The creditor had no reason to know the patio set was for his home and not an office. *Compare Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001) (dispute of material fact existed as to transaction's purpose where plaintiff took out loan in the name of his business to purchase a backhoe used to build his home and the loan instrument indicated funds would be used for "excavation equipment and other personal goods" (emphasis omitted)). Nor could the debt collector have known that the patio set was put to household use. On the other hand, everyone knew at all times that the account eventually placed in Divine's portfolio for collection was a corporate credit card account held by Gold Coast Insurance Agency, Inc. and that the terms of the card prohibited its use for "personal, family, or

household" purchases—the exact words used to define "debt" in the FDCPA. *See* 15 U.S.C. § 1692a(5).

In sum, extending the FDCPA to protect businesspeople sophisticated enough to obtain a corporate credit card, promise that it will not be put to personal use, and then immediately violate that promise, condones conduct that borders on fraud and is a far cry from the statute's goal to "regulate[] the debt collection tactics employed against *personal* borrowers on the theory that they are likely to be unsophisticated about debt collection and thus prey to unscrupulous collection methods." *Miller*, 214 F.3d at 875 (emphasis in original); *see* S. Rep. No. 95-382, at 3 (1977), 1977 U.S. Code Cong. & Admin. News 1695 ("This bill applies only to debts contracted by consumers for personal, family or household purposes; it has no application to the collection of commercial accounts."). Under these circumstances, a debt incurred by misusing a corporate credit card that restricts personal usage does not give rise to a consumer "debt" under the FDCPA.

A word on the reach of my holding: I do not necessarily part ways with those cases concluding that commercial purchases made on personal credit cards are excluded from FDCPA protection. *See, e.g.*, *Holman v. W. Valley Collection Servs., Inc.*, 60 F. Supp. 2d 935, 936-37 (D. Minn. 1999) (FDCPA does not apply to purchase of "commercial equipment" using personal credit card). For a personal credit card account, examining the owner and terms of the credit card agreement may not suffice to determine the nature of the debt. For example, personal credit card agreements might lack restrictions on card usage. Accordingly, it may be necessary to rely upon other aspects of the transaction, including the purchases themselves, to determine its nature. Nor do the policy concerns associated with examining each individual purchase apply with the same force to personal accounts. Unlike corporate accounts, the creditor and debt collector are on notice that a personal credit card will be likely put to personal use, and we might expect debt collectors

11

to err on the side of caution by follwing the FDCPA in case of doubt. Regardless, this case does not involve the use of a personal credit card, so I need not resolve this issue.

## CONCLUSION

Defendant's motion for summary judgment is granted, plaintiff's cross-motion for summary judgment is denied, and this case is dismissed.

**SO ORDERED.**

*Edward R. Korman*

Brooklyn, New York
June 14, 2019

Edward R. Korman
United States District Judge